UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
UNITED STATES OF AMERICA,　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　-against-　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　:　　　**MEMORANDUM AND ORDER**
SALOMON BENZADON BOUTIN,　　　　　　:　　　17-CR-590 (DLI)
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　Defendant.　　　　　　　:
------------------------------------------------------------ x

**DORA L. IRIZARRY, Chief United States District Judge:**

　　　　Defendant Salomon Benzadon Boutin was indicted by a grand jury of the Eastern District of New York on October 25, 2017, and charged with one count of attempted money laundering, in violation of 18 U.S.C. § 1956(a)(3)(B), and one count of theft of public property, in violation of 18 U.S.C. § 641. On November 2, 2017, United States Magistrate Judge Ramon E. Reyes, Jr., set conditions for Defendant's release on bond pending trial. Upon satisfying his bond conditions, Defendant was transferred to the custody of the Bureau of Immigration and Customs Enforcement ("ICE") of the United States Department of Homeland Security ("DHS"), pursuant to an ICE detainer. Defendant remains in custody in the Hudson County Jail and has appeared before this Court by writ *ad prosequendum* to address the instant charge.

　　　　Defendant moved to compel ICE to release him pursuant to the conditions set by the magistrate judge, or, in the alternative, to dismiss the indictment with prejudice. The Government opposed the motion. It alternatively requested that any dismissal of the indictment be without prejudice, and execution of any order of dismissal be stayed pending the Government's determination as to whether it will appeal such an order. The Court held oral argument on Defendant's motion on December 20, 2017, and granted the motion. The Government was ordered to release Defendant or to dismiss the indictment with prejudice by **3:00 p.m. on January 3, 2018**,

and to inform the Court of its decision by such time. The Government's request for a stay was denied. This opinion sets forth the reasoning underlying the Court's Order.

## BACKGROUND

Following an investigation by the United States Drug Enforcement Administration ("DEA"), Defendant was arrested on October 14, 2017, and, on October 16, 2017, was arraigned on a complaint charging him with money laundering and theft of government funds. *See* Gov't's Mem. of Law in Opp'n to Def.'s Mot. to Dismiss the Indictment if Not Released from ICE Custody ("Mem. in Opp'n") at 2, Dkt. Entry No. 19; Compl., Dkt. Entry No. 1. Defendant is a dual citizen of Spain and Panama and was admitted to the United States on July 9, 2015 on a Panamanian visa. Mem. in Opp'n at 2. According to the Government, that visa expired on January 8, 2016, and, therefore, Defendant is now in the United States illegally. *See* DHS/ICE Notice to EOIR: Alien Address, Form I-830 at 2, Dkt. Entry No. 19-1. On October 16, 2017, the date of Defendant's arraignment on the Complaint, DEA agents lodged an ICE detainer against him. Mem. in Opp'n at 2.

Defendant was indicted on the charges of money laundering and theft of government funds on October 25, 2017, and arraigned on the indictment on November 2, 2017. Mem. in Opp'n at 2-3. At arraignment, Magistrate Judge Reyes ordered Defendant released on a $100,000 bond co-signed by two members of Defendant's synagogue, with conditions of home confinement and location monitoring. *Id*. at 3. The Government consented to Defendant's release on bond, but Defendant remained in custody pursuant to the ICE detainer. *Id*. On November 3, 2017, Defendant was placed in ICE custody and transferred to the Hudson County Jail in New Jersey. *Id*. A deportation officer there ordered his continued detention. *Id*. An immigration judge reviewed that determination, and concluded that continuing to hold Defendant in immigration custody was

permissible as Defendant was subject to discretionary detention under immigration law. *Id*. at 3-4. An immigration hearing was set for December 13, 2017 before Immigration Judge Mimi Tsankov. *Id*.; Affirmation of S. Isaac Wheeler ("Wheeler Aff.") ¶¶ 9-12, Dkt. Entry No. 21-1.

On December 4, 2017, a notice was issued informing Defendant that his hearing before the Immigration Court had been advanced to December 6, 2017, a week before the original hearing date. *See* Mem. in Opp'n at 4; Notice of Hearing in Removal Proceedings, Dkt. Entry No. 22-1 ("New Hearing Notice"). The New Hearing Notice does not indicate when or whether it was received by Defendant's custodian. The New Hearing Notice is silent as to the reason for advancing the hearing on such short notice. It is not clear that Defendant received the New Hearing Notice in advance of the new hearing date of December 6, 2017, and Defendant, who at the time was unrepresented, told ICE officers that he believed his hearing to be scheduled for December 13, 2017. Mem. in Opp'n at 4. Moreover, Defendant's family still was in the process of retaining counsel to appear at the December 13 hearing. Transcript of Oral Argument on Motion Held 12/20/17 ("Tr.") at 15. The U.S. Attorney's Office also did not learn until December 6, 2017 that Defendant's hearing had been advanced by a week. Mem. in Opp'n at 4. Defendant did not appear for the December 6, 2017 hearing and was ordered removed *in absentia. Id*. Defendant has remained in immigration custody at the Hudson County Jail pending determination of this motion. Affirmation of Peter Kirchheimer ("Kirchheimer Aff.") ¶ 8, Dkt. Entry No. 18.

**DISCUSSION**

The instant case presents a question recently addressed by this Court: "whether Defendant may be held in ICE custody while his prosecution by the U.S. Attorney's Office is pending." *United States v. Ventura*, No. 17-cr-418 (DLI), 2017 WL 5129012 (E.D.N.Y. Nov. 3, 2017).[1]

---

[1] On December 4, 2017, the Government filed a notice of appeal in the Second Circuit Court of Appeals. *See Ventura*, No. 17-cr-418 (DLI), Dkt. Entry No. 35. However, the Government informed the Court at oral argument

Central to that question is an apparent conflict between the Bail Reform Act, 18 U.S.C. § 3141, *et seq.*, which governs the pretrial detention of most individuals charged with federal criminal offenses, and the Immigration and Nationality Act, 8 U.S.C. § 1101, *et seq.* ("INA"), which governs the detention of individuals who enter or remain in the United States unlawfully. In *Ventura*, this Court concluded that, once a criminal prosecution is initiated and the Government has invoked the jurisdiction of a federal district court, the Bail Reform Act is controlling. When an Article III court has ordered a defendant released, the retention of a defendant in ICE custody contravenes a determination made pursuant to the Bail Reform Act. As such, the Government's criminal prosecution cannot proceed and must be dismissed with prejudice. *See Ventura*, 2017 WL 5129012, at *3. As noted in *Ventura*, this issue has not been addressed by the Second Circuit Court of Appeals or any other circuit court, but other district courts that have addressed this issue are in accord. *Ventura*, 2017 WL 5129012, at *2.

The Government contends that *Ventura* and the line of cases it follows, beginning with *United States v. Trujillo-Alvarez*, 900 F. Supp.2d 1167 (D. Or. 2012), stand for a limited proposition: that ICE custody may not be used as a pretext for defying the Bail Reform Act, *i.e.*, the Government may not hold a defendant in ICE custody as an end run around a Bail Reform Act bond determination with which the Government disagrees. The Government further contends that this case differs from *Ventura* and the *Trujillo-Alvarez* line of cases in that the defendants in those cases were being prosecuted for criminal violations of immigration laws, whereas the instant defendant is not. The Government errs on both counts.

First, the Government maintains that, because both the immigration proceedings and the criminal proceedings have progressed in this case, Defendant's detention by ICE is not a pretext

---

on the instant motion that it has yet to submit a brief to the Solicitor General of the United States for his determination as to whether the *Ventura* appeal should be perfected. Tr. at 24-25.

designed to circumvent the Bail Reform Act. Rather, Defendant legitimately is detained by ICE because of the ongoing removal proceedings. The Court disagrees with the Government's narrow reading of *Ventura* and the *Trujillo-Alvarez* cases. Those cases recognize that, once the Government "invokes the jurisdiction of [the district court]," as it has here, "[the district court] has priority or first standing and administrative deportation proceedings must take a backseat to court proceedings until the criminal prosecution comes to an end." *United States v. Blas*, No. 13-cr-178 (WS)(C), 2013 WL 5317228, at *3 (S.D. Ala. Sept. 20, 2013).

In the instant case, the Government invoked the jurisdiction of this Court and even consented to Defendant's release on a bail bond under certain stringent conditions. At the same time, DEA agents sought an ICE detainer that they lodged. The Government was well aware that the defendant would be taken into ICE custody once he met the bail conditions, as happened here and in *Ventura*. *See Ventura*, 2017 WL 5129012, at *1. DOJ and ICE also are aware that this Court is powerless to affect any immigration proceedings.

Of particular concern here is the unjustifiable, inexplicable, and unexplained rush through the removal proceedings, especially given that, although the immigration judge originally assigned to the December 13th removal hearing calendar would be on vacation, another judge was assigned to cover the full calendar, and, according to defense counsel, only one other case had been advanced to December 6th. *See* Wheeler Aff. ¶¶ 10-15; Tr. at 12-15. Defense counsel, who has considerable experience with immigration law, explained to the Court the highly unusual nature of the Immigration Court's advancing of Defendant's removal proceedings. *See Id.* At oral argument, the Government conceded that, despite its having made inquiries about the issue, it has no idea why Defendant's removal proceeding was advanced in such an unusual manner. Tr. at 16-17. Given the sudden manner in which the removal hearing was advanced and the dubious

5

effectiveness of the New Hearing Notice that, *inter alia*, did not permit Defendant to retain counsel, this Court has grave concerns over the purpose of such process and the denial of Defendant's due process rights. This is especially so since Defendant was ordered removed *in absentia* and, according to the Government, ICE detention now is mandatory.

ICE's own regulations provide that removal of a deportable alien during the pendency of a criminal prosecution is prejudicial to the interests of the United States. *See* 8 C.F.R. § 215.3(g); *see also United States v. Ailon-Ailon*, 875 F.3d 1334, 1339 (10th Cir. 2017). The precedence of a criminal prosecution over a removal proceeding necessarily means that "the Government cannot…proceed on a dual criminal prosecution and deportation track…." *Ventura*, 2017 WL 5129012, at *2, quoting *United States v. Resendiz-Guevara*, 145 F. Supp.3d 1126, 1136 (M.D. Fla. 2015) (internal quotation omitted). Once the Government has invoked the district court's jurisdiction in the criminal prosecution, it must comply with the Bail Reform Act. Here, prejudice from a rush to enter an order of removal is plain, as the Government concedes that Defendant may be removed at any time. Tr. at 9.

Second, the Government insists that there is a meaningful distinction between a case in which the criminal proceeding concerns violations of immigration law and the instant case where Defendant is charged with violating a non-immigration law. The Government reasons that, if the two proceedings seek to vindicate separate interests, it is even more appropriate that they proceed on parallel tracks. *See* Mem. in Opp'n at 11. Yet, according to the Government, Defendant may be deported pursuant to the removal order[2] while his criminal prosecution is ongoing, thereby frustrating the disposition of the prosecution.

The Government's reasoning ignores the fact that case law, statutes, and regulations all

---

[2] Defense counsel represents that Defendant will seek to have the removal proceedings reopened. Wheeler Aff. ¶ 6. The filing and success of such a motion have no bearing on the Court's decision here.

give primacy to the criminal prosecution. Moreover, if the two proceedings vindicate entirely separate interests, it stands to reason that they should proceed sequentially so that one does not jeopardize the other. It matters not what the underlying charge is in the criminal prosecution. Ultimately, if a defendant is ordered removed, and is removed from the United States prior to the disposition of the criminal matter, several important interests are prejudiced or jeopardized. The people of the United States have an overarching interest that laws passed by Congress to protect their property, commerce, and safety be enforced. The Government, as an arm of the Executive, is tasked with enforcing these laws. Law enforcement agents put their lives on the line daily to investigate crimes and bring violators to justice, often with investment of significant time and resources. The federal court has an interest in ensuring that its scarce resources are not squandered. Notably, nothing in *Trujillo-Alvarez* or its progeny limits the application of those cases' principles to cases in which the defendant is charged with violating immigration laws, nor can the Government point to any case articulating such a limitation. *See* Tr. at 7.

Both the United States Department of Homeland Security ("DHS") and the United States Department of Justice ("DOJ") are part of the same Executive Branch of the federal government. The instant case, like *Ventura*, reflects a failure of coordination between the two agencies that jeopardizes the ability of DOJ to protect the interests of the government and of the people of the United States in prosecuting federal crimes. "The Executive, in the person of the Attorney General, wishes to prosecute defendant. The same Executive, in the person of the Assistant Secretary of Homeland Security for ICE, may want to deport him." *United States v. Barrera-Omana*, 638 F. Supp.2d 1108, 1111-12 (D. Minn. 2009). Case law, statutes, and DHS's own regulations provide a resolution to this conflict, yet DHS, under the auspices of ICE, apparently will deport an alien regardless of the resulting prejudice to criminal prosecutions. In doing so, DHS also purposefully

contravenes the Bail Reform Act, which, in part, exists to protect a defendant's constitutional rights. The Court is gravely concerned by this apparent willingness to prejudice the interests of the people of the United States and the constitutional rights of the accused, with resulting waste of DOJ, court, and defense resources. Nonetheless, "[i]t is not appropriate for an Article III judge to resolve Executive Branch turf battles." *United States v. Barrera-Omana*, 638 F. Supp.2d 1108, 1111-12 (D. Minn. 2009). ICE can choose to delay a deportation when a criminal prosecution is pending. *See Ailon-Ailon*, 875 F.3d at 1339. Should ICE be unwilling to do so, "it is a matter for the Executive Branch to resolve internally." *Id*. The Court's duty is "to treat defendant like any other alleged offender under the Bail Reform Act…[which] is not dependent upon the way in which ICE decides to act." *United States v. Marinez-Patino*, No. 11-cr-064 (SIS), 2011 WL 902466, at *8 (N.D. Ill. Mar. 14, 2011). It may not allow the Executive Branch to have it all ways. Accordingly, "the Executive Branch should decide where its priorities lie: either with a prosecution in federal district court or with removal of the deportable alien." *Ventura*, 2017 WL 5129012, at *2.

The Government has requested that the indictment, if it is to be dismissed, be dismissed without prejudice. Dismissal without prejudice would frustrate the purpose of the dismissal, namely to force the Government to make a choice. The Government is not without remedy as it may appeal this Court's decision. Therefore, the request is denied. The Government also has requested that any order of dismissal be stayed pending its decision whether to appeal that order. Apparently, such a stay would be indefinite as the Government still is deciding whether to perfect its appeal in *Ventura*, which was decided over a month ago. The Court sees no irreparable harm to the Government that would necessitate a stay. The Government is empowered fully to choose the path it prefers in this case: release Defendant from ICE custody and proceed with the criminal

prosecution, or retain Defendant in ICE custody and proceed with removal.  It simply cannot have it both ways.  Accordingly, the request for a stay also is denied.

## CONCLUSION

Defendant's motion is granted.  Accordingly, it is ORDERED that **NO LATER THAN 3:00 P.M. ON JANUARY 3, 2017**, the Government must inform the Court of its decision, and must either release Defendant on the bond conditions previously set by the Court **OR** the instant indictment is dismissed with prejudice.

SO ORDERED.

Dated:  Brooklyn, New York
          December 20, 2017

/s/
DORA L. IRIZARRY
Chief Judge